# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| MICHELLE POAGUE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 7:18-cv-00005-LSC |
| | ) | |
| HUNTSVILLE WHOLESALE | ) | |
| FURNITURE D/B/A ASHLEY | ) | |
| FURNITURE HOMESTORE, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

Plaintiffs Michelle Poague ("Poague"), Sherita Holley ("Holley"), Lakendria Coleman ("Coleman"), Katarda Bishop ("Bishop"), and Lorrie Acker ("Acker") (collectively "Plaintiffs") bring claims against Defendants Huntsville Wholesale Furniture d/b/a Ashley Furniture Homestore ("Ashley"), Taylor Swinney ("Swinney"), Jason Seavers ("Seavers"), and Daniel Hannan ("Hannan") (collectively "Defendants") arising from Plaintiffs' employment at Ashley's Tuscaloosa store. Before this Court are Hannan, Seavers, Swinney, and Ashley's respective motions to dismiss. (Docs. 25, 26, 28, & 29.) Plaintiffs have

timely filed their opposition.[1] The motions are fully briefed and ripe for review. For the reasons stated below, Hannan's Motion to Dismiss (doc. 25) is due to be granted, Seavers's Motion to Dismiss (doc. 26) is due to be denied, Swinney's Motion to Dismiss (doc. 28) is due to be denied, and Ashley's Motion to Dismiss (doc. 29) is due to be granted in part and denied in part.

## I.    BACKGROUND[2]

Ashley is a home furniture store with a number of locations throughout Alabama. During the time in question, Plaintiffs and Defendants Swinney and Seavers worked at Ashley in Tuscaloosa. Swinney was the Store's General Manager, and Seavers was Ashley's Director of Stores. Poague, Holley, Coleman, and Acker worked as product specialists at Ashley in Tuscaloosa. Product specialists at Ashley were paid an hourly rate plus commissions. In addition to their regular duties, product specialists are regularly required to hand out flyers, but they are not allowed to clock in while they hand out flyers. (Doc. 18 ¶ 79.) Additionally, Acker was once asked to come in and complete a sale, but was told she would not

---

[1]    The Court acknowledges that Plaintiffs' brief was non-compliant with this Court's Orders. (Docs. 27 & 32.) Although Plaintiffs' brief was non-compliant, the Court will consider Plaintiffs' response when ruling on the various motions to dismiss.

[2]    In evaluating a motion to dismiss, the Court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). The following facts are, therefore, taken from Plaintiff's allegations contained in the amended complaint, and the Court makes no ruling on their veracity.

be allowed to clock in while she completed the sale. Bishop worked as a cashier at Ashley, but she was employed through Express Temp Agency ("Express"). Bishop was paid a flat rate of ten dollars an hour.

Plaintiffs allege that Swinney and other male supervisors and co-workers at Ashley created a hostile work environment by consistently making sexually charged remarks and explicit statements towards employees and customers at Ashley. Swinney is alleged to have called attractive women, including customers, "Omahas" or "IHOPs." (*Id.* ¶¶ 32, 136.) Swinney is also alleged to have called the Store's Assistant Manager James Rigsby ("Rigsby") "raw-dog" or "raw-jaw" because Rigsby did not use condoms. (*Id.* ¶ 35.) On one occasion Swinney called Bishop his work wife, and on another he threw money at Bishop and told her he was going to "make it rain." (*Id.* ¶¶ 162, 165.) On another occasion, Swinney grabbed his crotch in front of Bishop and asked her if she wanted "deez nuts." (*Id.* ¶¶ 174, 178-79.) Swinney once held Bishop's hand in front of customers and on another occasion leaned over Bishop in order to press his genitals into her back. (*Id.* ¶¶ 158, 162.) Acker was also subject to physical advances by Swinney. Swinney is alleged to have touched Ackers breasts as he walked by her on two separate occasions and to have once touched Acker's buttocks as he walked by her. (*Id.* ¶

36.) In response to a complaint about his behavior, Swinney stated that "if [plaintiff] can't take the heat, then get out of the room." (*Id.* ¶ 53.)

Rigsby and product specialist Sam Gibson ("Gibson") are also alleged to have engaged in harassing activity. Rigsby is alleged to have spoken openly about having sex with two girls at one time, showed his co-workers texts with nude pictures he received from a customer that described sex acts, discussed his love for pregnant female's breasts and his desire to feed from them, talked about his use of condoms, and relayed other graphic sexual stories to other employees at Ashley. (*Id.* ¶¶ 39-44.) Gibson is alleged to have openly discussed his love for amateur porn with co-workers, said he "want[ed] those customers" who were trying out the mattresses, told Poague she "blows," and talked about "how disgusting it is to 'f***k white chicks." (*Id.* ¶¶ 48-51.) Additionally, male co-workers are alleged to have played a video of a man talking about "licking girls' booties." (*Id.* ¶ 52.)

Swinney is also alleged to have shown favoritism to male employees at Ashley. For example, Swinney did not follow store policy of sending walk-in customers to different product specialists. Instead, Swinney sent all walk-in customers to male product specialists. (*Id.* ¶¶ 56-57.) Swinney also approved sales by male product specialists at much lower sales margins than female product specialists at Ashley were allowed to offer. (*Id.* ¶¶ 59-60.) Additionally, Swinney

checked only female product specialists' sales margins, assigned female's sales to male product specialists, and refused to give female employee their "Sales by Salesperson" details, which would have allowed Plaintiffs to track their earnings. (*Id.* ¶¶ 61-63, 65.) Swinney also required female employees at Ashley to sign in and out of breaks, and disciplined female employees more harshly than male employees who missed work. (*Id.* ¶¶ 70, 71, 73-74.) For example, Swinney suspended Coleman for three days after she was five minutes late to work, but did not suspend a male employee who failed to show up for an entire day of work. (*Id.* ¶ 73.) Swinney is also alleged to have spoken only to female employees about violations of Ashley's dress code. (*Id.* ¶ 75.)

Poague and Holley specifically allege that they were also subject to discrimination due to their pregnancies. In October 2015, Poague had a child and requested FMLA leave. (*Id.* ¶ 80.) Poague was not eligible for FMLA leave, so she took vacation for the birth of her child. (*Id.* ¶ 81.) Poague returned to work at Ashley in January 2016. Although Poague's previous manager had promised to provide her with a private place to express breast milk, Swinney told Poague she could express milk in the community room. The community room has a number of cameras because it contains clearance merchandise that customers at Ashley could purchase. (*Id.* ¶¶ 85-86.) As a result of not having a private place to express milk,

Poague had to travel between home and work to express milk. (*Id.* ¶ 88.) This travel caused Poague to have to hand over sales she initiated to co-workers and lose wages because she was not able to be on the sales floor. (*Id.* ¶¶ 89-92.) Poague tried to take FMLA leave so that she could care for her son, who was having problems developing because Poague could not feed him as often as needed. Even though Poague had in fact become eligible for FMLA leave, Swinney and Seavers told Poague that she was ineligible for FMLA leave. (*Id.* ¶¶ 103-05.) Swinney then told Poague she needed to work more hours, and that he did not care that her hours were reduced because she lacked a private place to express milk. (Id. ¶¶ 97-98.)

In February 2016, all product specialists received a one dollar per hour raise. (*Id.* ¶ 95.) Holley was excluded from this raise. Holley was then told she was not given this raise because she was on maternity leave. (*Id.* ¶¶ 96, 113.) In July 2016, Poague was granted FMLA leave to care for her child. When Poague went on FMLA leave her pending sales and deliveries were assigned to male colleagues, and Swinney told her she would be placed on a disciplinary performance plan upon her return from leave. (*Id.* ¶¶ 107-09.) In August 2016, Danny Pastor was hired at a rate one dollar per hour higher than Holley's pay rate. (*Id.* ¶¶ 110-11.)

Poague returned from FMLA leave on October 1, 2016, and was immediately placed on a disciplinary performance plan. (*Id.* ¶¶ 124-25.) Additionally, Poague

discovered that her finger print no longer worked on the time clock, she no longer had an inbox, and that she would not be given a tablet or leather binder for her sales as other employees had been given. (*Id.* ¶ 128.) Poague was then written up for not meeting the terms of her disciplinary performance plan. (*Id.* ¶129.) Although Poague was written up, her sales were among the top ten in the nation for Ashley during one of the weeks. (*Id.* ¶ 130.)

In November 2016, Poague complained about Swinney's behavior to HR. (*Id.* ¶ 132.) In December 2016, Poague filed an EEOC charge about Swinney's behavior. (Id. ¶ 134.) After Poague filed her charge, Swinney called her into his office and confronted her. (*Id.* ¶ 134.) Swinney then took Poague's target cards, told other managers that he had to approve any sales Poague made, interfered with Poague's sales orders and deliveries, and changed Poague's commission plan. (*Id.* ¶¶ 141-43, 146, 149.) Swinney told a male colleague that he wanted "'to get rid of' Poague." (*Id.* ¶ 149.) Later in December 2016, HR interviewed Coleman about Swinney's behavior. In the interview, Coleman told HR about Swinney's behavior and his treatment of female employees at Ashley. (*Id.* ¶ 150.)

In January 2017, Holley and Coleman filed EEOC charges against Ashley for Swinney's actions. (*Id.* ¶¶ 152, 154.) Swinney then stated he would get rid of Coleman after he got rid of Poague. (*Id.* ¶ 155.) In that same month, Bishop

complained to Ashley's Office Manager Mia Washington ("Washington") about Swinney, stating that he made her uncomfortable because he would touch her and invade her personal space. (*Id.* ¶ 156.) In February 2017, due to the ongoing nature of Swinney's conduct, Poague supplemented her EEOC charge and emailed staff and managers at Ashley about the conditions there. (*Id.* ¶ 160.) In March 2017, Bishop again complained about Swinney to Washington. (*Id.* ¶ 163.) Bishop's hours were then cut from fifty to forty hours a week. (*Id.* ¶ 168.) In that same month, Acker filed an EEOC charge concerning Swinney's behavior. After Acker filed her charge, Swinney refused to assist her with sales. (*Id.* ¶ 172.)

In April 2017, Bishop complained to Express about Swinney's behavior because Ashley had not addressed her complaints and Swinney continued to make advances towards her. (*Id.* ¶¶ 173, 176.) The day after she lodged her complaint with Express, Bishop recorded Swinney making comments to her about his genitals and asking her if she wanted "deez nutz." (*Id.* ¶¶ 178-80.) Bishop played this recording for Express. (*Id.* ¶ 184.) Ashley terminated Swinney shortly thereafter. (*Id.* ¶ 182)

After Swinney was terminated, Acker interviewed for another position at Ashley in Tuscaloosa. (*Id.* ¶ 185.) At this time, Counsel for Plaintiffs had been obtained and Ashley's Attorney Hannan had received notice that Plaintiffs were

represented. (*Id.* ¶ 183.) During her interview, Acker met with Seavers and Hannan, who claimed to represent HR for Ashley. (*Id.* ¶¶ 187-88.) In the interview, Hannan asked Acker about Poague's claims and Swinney's actions, including whether Swinney had done anything to her. (*Id.* ¶¶ 190-95.) After the interview, Hannan told Acker she could only have the job if she signed the paperwork he presented to her at the very moment. (*Id.* ¶ 196.)This paperwork included waivers of Acker's claims, a statement against Poague, and a document retracting her EEOC charge. (*Id.* ¶ 275.) Acker signed the paperwork and was rehired. (*Id.* ¶ 200.)

## II. STANDARD

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, in order to withstand a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated

another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

## III. Discussion

### a. Shotgun Pleading

Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) further provides:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence–and each defense other than a denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b).

Complaints that violate these rules are often referred to as shotgun pleadings. The Eleventh Circuit has identified four rough "categories" of shotgun pleadings that are prohibited. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). The Eleventh Circuit has described complaints that fall into the following categories as shotgun pleadings:

> [1.] a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint....[2.] a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action....[3. a complaint that] commits the sin of not separating into a different count each cause of action or claim for relief. [4.]...[a complaint] asserting

multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id.* at 1321-23 (footnotes omitted). The common denominator in all these forms of "shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Defendants allege that Plaintiffs' amended complaint has indicia of all four categories of shotgun pleading and is therefore due to be dismissed. Although Plaintiffs' amended complaint is often disorderly and vague, it does not rise to the level of an impermissible shotgun pleading. Plaintiffs' amended complaint does incorporate all prior paragraphs into each claim. However, these references are also accompanied by a specific incorporation of facts tailored to the specific claims. While Plaintiffs' amended complaint may bear some resemblance to a shotgun pleading, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Weiland*, 792 F.3d at 1324.

To the extent Defendants' argue they are impermissibly "lumped" together in each count, the Court finds that Plaintiffs' amended complaint is sufficiently

plead to provide notice to Defendants as to what claims are being asserted against each defendant. Plaintiffs' amended complaint does, in several instances, refer to "Defendant" or "Defendants" generally without specifying which Defendant is being referred to in each count. However, Plaintiffs identify which Defendants they are asserting their claims against in the caption of each count. Although the captions of the counts in the complaint are not part of the statement of claim under Rule 8, the Court will not require Plaintiffs to re-plead their complaint simply because Defendants seek to have the same information provided by the caption repeated within the numbered paragraphs of the amended complaint.[3]

Defendants also argue that Plaintiffs' amended complaint is shotgun pleading because its factual allegations are too conclusory and vague. However, Defendants' argument in this regard is unavailing because it appears that Defendants are asking this Court to require Plaintiffs to provide more factual allegations about their allegations. Defendants' argument would be convincing were this case at the summary judgment stage. Plaintiffs are required at the motion to dismiss stage to give defendants sufficient notice of the grounds for plausible claims against them, no more and no less.

---

[3] To the extent Plaintiffs may later try and assert a claim against a current defendant not specifically named within the current caption of a count in amended complaint, the Court notes that the Plaintiffs will need this Court's permission to amend their complaint and assert any of these claims against a party not referenced in the current captions.

If Plaintiffs' amended complaint was a shotgun pleading, it would be "difficult to understand what the Defendants 'were alleged to have done and why they were liable for doing it.'" *See Downing v. Midland Funding, LLC*, No. 2:15-cv-00737-RDP, 2016 WL 125861, at *3 (N.D. Ala. Jan. 12, 2016) (quoting *Wright v. Watson*, No. 15-cv-34(CDL), 2015 WL 4873381, at *3 (M.D. Ga. Aug. 13, 2015)). Defendants have provided this Court with extensive briefing regarding the merits of Plaintiffs' factual allegations and their sufficiency to maintain a claim. Therefore, to the extent Defendants claim they do not have sufficient notice, the Court finds that their briefing suggests otherwise. Ultimately, the amended complaint and the facts therein "are informative enough to permit a court to readily determine if they state a claim upon which relief can be granted," and are thus not due to be dismissed as an impermissible shotgun pleading. *Weiland*, 792 F.3d at 1326.

**b. IMPLIED MOTION TO STRIKE**

Swinney asks this Court in his briefing to strike allegations in Plaintiffs' amended complaint that (1) Washington "told Bishop [that] Swinney has been accused of inappropriate sexual conduct with a minor," and (2) that "[a]nother female product specialist, not listed as a plaintiff, and not named in the complaint, is afraid to come forward for fear of losing her job." (Doc. 18 ¶¶ 77, 166.); (Doc. 28 at 12, 27.) A motion to strike is appropriate under FED. R. CIV. P. 12(f) for "any

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Id.* Motions to strike factual allegations are disfavored and "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Augustus v. Bd. of Pub. Instruction of Escambia Cty, Fla.*, 306 F.2d 862, 868 (5th Cir. 1962).[4]

While Swinney argues these allegations are prejudicial, he has failed to demonstrate to the Court that these allegations have no relation to the claims pending before the Court. Plaintiffs have brought a number of claims against Ashley for both its own actions and Swinney's actions. These claims include a sexual harassment and retaliation claims. The allegations Swinney challenge relate to Plaintiffs' claims as they demonstrate possible knowledge by Ashley about inappropriate Swinney's conduct, and a possible work environment where retaliation occurred. Swinney may be correct that these facts will not bear out in discovery or ultimately be produced in an admissible form. Yet, the Court is not tasked with predetermining such issues based on the face of Plaintiffs' amended complaint. Therefore, Swinney's implied motion to strike these allegations is due to be denied.

---

[4] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

### c. TITLE VII

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Plaintiffs allege that they were subject to (1) sexual harassment, (2) disparate treatment, and (3) retaliation in violation of Title VII. Poague and Holley also assert that they were subject to unlawful discrimination in violation of the Pregnancy Discrimination Act.

### i. SEXUAL HARASSMENT-HOSTILE WORK ENVIRONMENT

"A complaint in an employment discrimination case need not contain specific facts establishing a *prima facie* case under the evidentiary framework for such cases to survive a motion to dismiss." *Henderson v JP Morgan Chase Bank, N.A.*, 436 Fed. App'x 935, 937(11th Cir. 2011) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002)). A plaintiff adequately pleads a claim for hostile work environment if she alleges (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive working environment; and (5) a basis exists for holding the employer liable. *Trask v. Sec'y,*

*Dep't of Veterans Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016). Ashley argues that (1) Plaintiffs have failed to provide sufficient factual allegations to bring a sexual harassment claim, and (2) Plaintiffs' factual allegations do not rise to the level of creating a hostile work environment.

Plaintiffs allege facts indicating that their supervisors Swinney and Rigsby, as well other male employees, frequently talked in graphic detail about sex, made derogatory and sexually charged comments towards them and female customers, and at times engaged in unwanted physical contact with some of the Plaintiffs. Plaintiffs have also alleged facts indicating that Ashley was aware of Swinney's actions, but that it did not take action until Bishop played a recording of Swinney's comments for Express. Although Ashley alleges that many of these factual allegations are too conclusory and vague to state a claim, the facts are alleged with sufficient particularity to meet the pleading standard in Rule 8.

To the extent Ashley seeks to have this claim dismissed on the basis that the conduct alleged is not sufficiently severe or pervasive, the determination of whether this conduct rises to the level of severe or pervasive is, in this Court's view, a finding that is more appropriately made at the summary judgment stage

when discovery has been completed. Thus, Ashley's motion to dismiss is due to be denied as to Plaintiffs' sexual harassment-hostile work environment claim.[5]

## ii. GENDER DISCRIMINATION-DISPARATE TREATMENT

Disparate treatment claims under Title VII "all require proof of discriminatory intent." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). To show intent, the plaintiff may rely on direct or circumstantial evidence. *Burke-Fowler v. Orange Cty, Fla.*, 447 F.3d 1319, 1323 (11th Cir.2006). To show intent through circumstantial evidence, the plaintiff may rely on the framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804 (1973). *Id.* at 1562. A *prima facie* case requires a plaintiff to show that: "(1) he belongs to a [protected class]; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Id.* "Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas prima facie case*, it must provide enough factual matter (taken as true) to suggest intentional[] discrimination." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir.2008) (internal citations and quotations omitted) *abrogated on other grounds by*

---

[5]    Ashley seeks dismissal of Plaintiff Holley's sexual harassment claim because she is not referenced as a direct victim of the alleged harassment. The Court finds that there are sufficient factual allegations to support Holley's claim, even if she was not directly subject to Swinney's advances. *See Reeves v. C.H. Robinson Worldwide, Inc.,* 594 F.3d 798 (11th Cir. 2010).

*Iqbal,* 556 U.S. at 662; *See Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1246 (11th Cir. 2015).

Ashley asserts that Plaintiffs' disparate treatment claims are due to be dismissed because they fail to provide sufficient facts to state a claim. Upon review, Plaintiffs have alleged sufficient facts, if taken as true, that suggest intentional discrimination by Ashley in terms of discipline and the allocation of compensation. *See Surtain*, 789 F.3d at 1246 (noting a plaintiff need not plead a *prima facie* case "because *McDonnell Douglas*'s burden-shifting framework is an evidentiary standard, not a pleading requirement."). For example, Plaintiff allege facts indicating that male product specialists were assigned more walk in customers, subject to less stringent rules on attendance and dress code, and given more latitude in making sales. Therefore, Ashley's motion is due to be denied as to Plaintiffs' disparate treatment claims.

### iii. RETALIATION

To establish a claim for retaliation, a plaintiff must plead that (1) she was engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016). The law does not require Plaintiffs to make a formal complaint to engage in

statutorily protected activity as an informal complaint that "explicitly or implicitly communicate[s] a belief that [the conduct suffered by the plaintiff] constitutes unlawful employment discrimination" may be considered protected activity. *Id.* at 1311.[6]

Ashley asserts that it is entitled to dismissal of Plaintiffs' retaliation claims because Plaintiffs do not allege when they complained and to whom they complained. (Doc. 30 at 26.) Upon review, the amended complaint contains factual allegations concerning how and when all of the Plaintiffs did in fact complain or engage in what could be considered statutorily protected activity, which includes filing an EEOC charge. (*See* Doc. 18 ¶¶ 112, 132, 150, 163, 169, 176.)

Ashley also argues that Plaintiffs' claims are due to be dismissed because there is no evidence or factual allegations indicating that these actions were adverse or that there is any causal connection. The Court's review of the amended complaint finds that the facts as alleged plausibly indicate that Acker, Bishop, Coleman, Holley and Poague engaged in protected activity and were subject to

---

[6] Informal complaints that communicate a belief that unlawful discrimination is occurring constitute protected activity if they are made by an individual that has a good faith, reasonable belief that unlawful discrimination is occurring. *See Id.* Questions about whether the conduct satisfies the additional "good faith, reasonable belief" requirement is a matter to be assessed at the summary judgment stage.

adverse actions. Plaintiffs have also alleged sufficient facts to indicate a plausible causal link as these adverse actions occurred close in time to their complaints.

Although Ashley argues that Bishop's claim is subject to dismissal because she did not engaged in protected activity until after she left Ashley, the Court notes that the facts alleged indicate that Bishop complained about Swinney to Ashley, in what could be considered protected activity, in March 2017 and that her hours were cut shortly thereafter. (*Id.* ¶¶ 163, 168.) Therefore, Ashley's argument that Bishop's retaliation claim should be dismissed is unavailing, and Ashley's motion is due to be denied as to Plaintiff's retaliation claims.

### iv. PREGNANCY DISCRIMINATION

The Pregnancy Discrimination Act ("PDA"), added to the Civil Rights Act in 1978, specifies that discrimination based on sex includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). It requires that "women affected by pregnancy, childbirth, or related medical conditions. . . be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." *Id.* Pregnancy discrimination claims use the same analysis as other Title VII sex discrimination cases. *Armstrong v. Flowers Hosp., Inc.,* 33 F.3d 1308, 1312-13 (11th Cir. 1994). To state a *prima facie* case for pregnancy discrimination, Plaintiff

must establish that "(1) she [was pregnant]; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) employment or disciplinary policies were differently applied to her." *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 12555 (11th Cir. 2012).

Ashley first appears to argue that both Poague and Holley's pregnancy discrimination claims are untimely because their EEOC charges were filed a year after they were pregnant. The PDA does not provide protections only during one's pregnancy. 42 U.S.C. § 2000e(k)("The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes."); *see Hicks v. City of Tuscaloosa*, 870 F.3d 1253, 1258 (11th Cir. 2017) (finding that lactation is a pregnancy related medical condition covered by the PDA). Therefore, the gap between the birth of Plaintiffs' children and the filing of Plaintiffs' EEOC charges does not necessarily indicate that Plaintiffs' charges were untimely.[7]

Ashley also argues that Poague and Holley's factual allegations lack sufficient detail to state a claim. In regard to Holley's PDA claim, Plaintiffs have

---

[7] Ashley offers no legal argument that Plaintiffs claims were untimely other than asserting that Poague and Holley's EEOC charges were filed a year after their pregnancy.

alleged sufficient facts to state a claim. Plaintiffs allege facts indicating that Holley was pregnant, denied a pay raise while on maternity leave, and told that she was denied this raise specifically because she was on maternity leave.

Plaintiffs have also alleged sufficient facts to bring a plausible PDA claim on Poague's behalf. The PDA does not require employers "to give special accommodations to breastfeeding mothers." *Hicks*, 870 F.3d at 1260. Instead employers are only required to treat pregnant employees the same as "other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k); *see Hicks*, 870 F.3d at 1261 (finding that a valid PDA claim existed when plaintiff "showed that other employees with temporary injuries were given 'alternative duty,' and [plaintiff]  merely requested to be granted the same alternative duty."). Certainly, Plaintiffs have not alleged facts indicating that Poague was treated differently from others who had a similar "ability or inability to work."

However, the amended complaint provides factual allegations that plausibly suggest intentional pregnancy discrimination occurred. Poague alleges that Swinney told her she needed to work more hours and that he "did not care" that she was on a reduced schedule because she had to return home to express milk. (Doc. 18 ¶  104.) Poague also alleges that Swinney and Seavers told her she was not

qualified for leave to care for her child and that she should "quit to focus on her family." (*Id.* ¶ 105.) Once Poague returned from leave due to issues related to her pregnancy, she was subject to additional scrutiny by Swinney for her time off and a loss in compensation as the sales she made prior to her leave were credited to other male product specialists. Poague does not have to plead a *prima facie* case to survive a motion to dismiss as long as she includes sufficient facts to suggest that intentional discrimination based on her pregnancy. Poague has done so. Thus, Ashley's Motion is due to be denied as to Poague and Holley's pregnancy discrimination claim.

### d. FMLA RETALIATION AND INTERFERENCE

Poague brings claims against Ashley for violation of the Family and Medical Leave Act ("FMLA"). The FMLA entitles eligible employees to leave from work for certain reasons, including when an employee's child is suffering from a "serious health condition." *See* 29 U.S.C. § 2612(a)(1)(C). "To preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: interference claims, in which an employee asserts that [her] employer denied or otherwise interfered with his substantive rights under the (FMLA)...and retaliation claims, in which an employee asserts that [her] employer discriminated against

[her] because he engaged in activity protected by the [FMLA]." *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001).

### i. INTERFERENCE

To plead an interference claim, a plaintiff must allege that "[she] was denied a benefit to which [she] was entitled to under the FMLA…and that she has been prejudiced by the violation in some way." *Evans v. Books-A-Million*, 762 F.3d 1288, 1295 (11th Cir. 2014) (quoting *Martin v. Brevard Cty. Public Schools*, 543 F.3d 1261, 166-67 (11th Cir. 2008)). An employee does not have to prove "that [her] employer intended to deny the benefit…."*Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). Instead, a plaintiff "need only demonstrate some harm remediable by either 'damages' or 'equitable relief.'" *Evans*, 762 F.3d at 1296.

Plaintiffs have alleged sufficient facts for Poague bring a claim for FMLA interference. The amended complaint indicates that Poague was eligible for FMLA leave and that her request for leave was denied by Swinney and Seavers even though she was eligible for leave.[8] Although Poague was later granted FMLA leave, Poague has alleged sufficient facts that plausibly suggest she was prejudiced by this

---

[8]     Ashley does not contest Plaintiffs' assertion that Poague was covered by and eligible for FMLA leave.

denial. Therefore, Ashley's motion is due to be denied as to Poague's FMLA interference claim.

## ii. RETALIATION

A plaintiff establishes a *prima facie* case of retaliation under the FMLA by showing that: "(1) [s]he engaged in statutorily protected activity; (2) [s]he experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action." *Hurlbert*, 439 F.3d at 1297; *see Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000) (noting that the Eleventh Circuit uses the *McDonnell Douglas* framework for FMLA retaliation claims).

Here, Poague has alleged facts indicating that she took FMLA leave and that upon her return she was subject to number of adverse actions, including a loss of income as commissions she earned prior to her FMLA leave were assigned to other product specialists. The facts as alleged also indicate a plausible causal connection as the alleged adverse actions occurred during and closely after Poague's return from FMLA leave. *See Jones v. Gulf Coast Healthcare of Delaware*, 854 F.3d 1261, 1261 (11th Cir. 2017). Thus, Ashley's motion is due to be denied as to Poague's FMLA retaliation claim.

### e. FLSA

#### i. EQUAL PAY ACT

Plaintiffs allege that Ashley violated the Equal Pay Act ("EPA") in regard to

Holley's compensation. The EPA provides that:

> No employer having employees subject to any provisions of this
> section shall discriminate, within any establishment in which such
> employees are employed, between employees on the basis of sex by
> paying wages to employees in such establishment at a rate less than the
> rate at which he pays wages to employees of the opposite sex….

29 U.S.C. § 206 (d)(1). To plead an EPA violation, the plaintiff must allege facts

indicating "that the employer paid employees of opposite genders different wages

for equal work for jobs which require equal skill, effort, and responsibility, and

which are performed under similar working conditions." *Steger v. Gen. Elec. Co.*,

318 F.3d 1066, 1077–78 (11th Cir. 2003) (citations and quotations omitted). "Once

a prima facie case is demonstrated, to avoid liability the employer must prove by a

preponderance of the evidence that the differential is justified by one of four

exceptions set forth in the EPA." *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995).

The exceptions to the EPA are: "(i) a seniority system; (ii) a merit system; (iii) a

system which measures earnings by quantity or quality of production; or (iv) a

differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

Upon review, Plaintiffs have not alleged sufficient facts to state a plausible claim for a violation of the EPA in regard to Holley's compensation. Plaintiffs' factual allegations indicate that "[i]n August 2016, [Ashley] hired Danny Pastor at $10.00 per hour," that "Holley was paid $1.00 less per hour than Pa[s]tor," and that "[w]hen Pastor was hired, Holley learned of the disparate pay and complained." (Doc. 18 ¶¶110-13, 257.) Noticeably missing from Plaintiffs' factual allegations are any facts indicating that Pastor was hired to the same position as Holley or that he performed a job that required "equal skill, effort, and responsibility" as Holley's position and that this job was "performed under similar working conditions." 29 U.S.C. § 206(d). Therefore, Ashley's motion to dismiss is due to be granted as to Holley's EPA claim.

### ii. MINIMUM WAGE

Plaintiffs also allege that Ashley did not pay them minimum wage in violation of the FLSA because product specialists were regularly required to hand out flyers without being allowed to clock in, and Acker had to come in on an off day to complete a sale but was not allowed to clock in while completing the sale. A *prima facie* case of an FLSA violation requires a showing that "as a matter of just and reasonable inference… the wages paid to [plaintiff] did not satisfy the requirements of the FLSA." *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 475 n.12 (11th

Cir. 1982). Under 29 U.S.C. § 206(a), an employer must pay an employee the federal minimum wage of $7.25 per hour worked during each workweek. For purposes of § 206, "the relevant pay period is determined from the actual pattern of payments adopted by the parties." *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, 1577 (11th Cir. 1985), *modified*, 776 F.2d 265 (11th Cir. 1985) (internal quotations and citations omitted). A pay period may be weekly, bi-monthly, monthly, or even longer. *Id.* at 1575.

Here, Plaintiffs allege facts indicating that Ashely did not pay them when they were required to hand out flyers, and that Ashley would not always pay employees, including the Plaintiffs, when they were completing sales on their off days. These facts plausibly suggest that Plaintiffs were not paid for their work in accordance with the FLSA. Therefore, Ashley's motion is due to be denied as to Plaintiffs' minimum wage claims.

### iii. 29 U.S.C. § 207(R)

Poague alleges that Ashley violated the FLSA when it denied her a private place to express breast milk in violation of Section 7 of the FLSA, 29 U.S.C. § 207(r)(1) ("§207(r)"). Section 207(r)(1) provides that employers shall provide:

> (A) a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk; and

(B) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

29 U.S.C. § 207(r)(1). "[A]n employer [is] not [] required to compensate an employee receiving reasonable break time [to express breast milk] for any work time spent for such purpose." 29 U.S.C. § 207(r)(2). Accordingly, Section 207(r) provides no additional right to damages beyond those under the FLSA, i.e. unpaid minimum wages or unpaid overtime compensation. Therefore, courts have found in their interpretation of §207(r) that employees may only recover for unpaid minimum wage or overtime wages due as a result of a violation of §207(r). *See Hicks v. City of Tuscaloosa,* No. 7:13-cv-02063-TMP, 2015 WL 6123209 at * 28-30 (N.D. Ala. Oct. 19, 2015)(citing *Lico v. TD Bank*, No. 14-cv-4729(JFB)(AKT), 2015 WL 3467159 at * 3-4 (E.D. N.Y. June 1, 2015)).[9]

Upon review, Poague has alleged sufficient facts to plead a violation of §207(r) for which she can recover. Poague alleges facts indicating that she was not provided a private place to express milk and that as a result she had to leave work to express milk. Because Poague had to leave to express milk, she had to turn sales over to her colleagues and missed out on sales that she could have made had she been at work. *See Lico*, 2015 WL 3467159, at *3-4 (finding that a plaintiff alleged

---

[9]     The Eleventh Circuit has yet to rule on the issue of damages recoverable under §207(r). *See Miller v. Roche Sur. And Cas. Co., Inc.,* 502 Fed. App'x 891, 893 (11th Cir. 2012).

cognizable damages when the amended complaint included allegations that plaintiff "missed time at work because she needed to travel home in order to express milk.") Therefore, Ashley's motion is due to be denied as to Poague's claim for under § 207(r) of the FLSA.

### f. CONSTRUCTIVE DISCHARGE

Poague, Holley, Acker, and Bishop allege that they were constructively discharged due to the conditions at Ashley. To bring a claim for constructive discharge, a plaintiff must plead facts that tend to show that "an employer deliberately ma[de] an employee's working conditions intolerable and thereby forc[ed] him to quit his job." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (quoting *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 244 (4th Cir. 1997)).Workings conditions, however, must be "so unbearable that a reasonable person in that person's position would be compelled to resign." *Id.* (quoting *Virgo v. Riviera Beach Ass'n, Ltd.*, 30 F.3d 1350, 1363 (11th Cir. 1994)). It is more difficult to make out a claim for constructive discharge than one for a hostile work environment. *Id.* at 1298-99.

Ashley argues that Plaintiffs' constructive discharge claims should be dismissed because Plaintiffs have failed to state a *prima facie* case of retaliation. A determination that Plaintiffs did not plead a *prima facie* case of retaliation or that

Ashley did not engage in unlawful retaliation does not foreclose Plaintiffs' constructive discharge claims as plead. Plaintiffs have alleged that the sexual harassment they experienced created a hostile work environment that rose to the level of a constructive discharge. Thus, Ashley's argument that Plaintiffs' constructive discharge claims should be dismissed because they have not pled a *prima facie* case of retaliation is unavailing.

To the extent Ashley alleges that these facts would not rise to the level of a constructive discharge as alleged, the Court finds that such a conclusion is premature based on the notice pleading standard as Plaintiffs have alleged facts plausibly suggesting that the alleged acts of harassment did in fact change the terms and conditions of their employment at Ashley such that working at Ashely became intolerable. Therefore, Ashley's motion to dismiss is due to be denied as to Plaintiffs' constructive discharge claims.[10]

### g. SECTION 1985 CONSPIRACY

Poague and Acker also claim that Hannan, Seavers, and Ashley are liable for conspiracy under 42 U.S.C. § 1985. Plaintiffs do not specify which section of § 1985 they are bringing a claim under. Upon review of the amended complaint, the

---

[10] Ashley argues that Coleman still works at the store and thus the work environment was not so hostile as to rise to the level of constructive discharge. Such arguments are more appropriately addressed at the summary judgment stage.

Court finds that Plaintiffs have alleged sufficient facts to state a claim Section

1985(2).[11] Section 1985 (2) provides:

> (2) Obstructing justice; intimidating party, witness, or juror

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

42 U.S.C. § 1985(2). A plaintiff seeking to recover under the "first four clauses of

§ 1985(2)…must show a nexus between the alleged conspiracy and a proceeding in

federal court." *Bradt v. Smith*, 634 F.2d 796, 801 (5th Cir. 1981) (quotations

---

[11] Section 1985(1) is inapplicable in this instance as there are not allegations of interference with an officer of the US preforming duties. Section 1985 (3) is also inapplicable in this case because "[w]hen the alleged § 1985(3) conspirators are private actors, the plaintiff must demonstrate that the conspiracy was aimed at rights constitutionally protected against private impairment." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) "The only rights the Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude." *Id.* Therefore, Plaintiffs' § 1985 claim in this instance can only be brought under § 1985(2).

omitted). While a plaintiff seeking to recover under the "last two clauses of §

1985(2) … must show a racial or otherwise class-based discriminatory animus." *Id.*

Plaintiffs concede that Hannan should be dismissed from this case. (Doc. 31

at 3-4.) Therefore, Hannan's motion to dismiss (doc. 25) is due to be granted and

Hannan dismissed from this case as no other claims are pending against him.

As to the other Defendants, Plaintiffs have alleged sufficient facts to

maintain their § 1985(2) claims. Although Seavers and Ashley argue that Plaintiffs'

claims are barred by the intracorporate conspiracy doctrine, *McAndrews v. Lockheed

Martin Corp*, 206 F.3d 1031, 1036 (11th Cir. 2000), the Court finds that Plaintiffs

have plead sufficient facts indicating that the criminal conspiracy exception to the

intracorporate conspiracy doctrine may apply. Therefore, Seavers's motion to

dismiss is due to be denied and Ashley's motion to dismiss is due to be denied as to

Plaintiffs' 1985(2) claim.

### h. STATE LAW TORT CLAIMS

Plaintiffs bring state law tort claims against both Swinney and Ashley.

Plaintiffs' tort claims against Ashley arise from Swinney's conduct and the

conditions at Ashley. An employer will be liable for the intentional torts of its

employee if "(1) that the agent's wrongful acts were committed in the line and

scope of the agent's employment; or (2) that the acts were committed in

furtherance of the business of the employer; or (3) that the employer participated in, authorized, or ratified the wrongful acts." *Potts v. BE & K Constr. Co.*, 604 So.2d 398, 400 (Ala.1992).

An employer ratifies the employee's conduct if the employer expressly adopts the behavior or implicitly approves of it. *See Mardis v. Robbins Tire & Rubber Co.*, 699 So.2d 885, 889 (Ala. 1995). To show that an employer ratified an employee's act, the plaintiff must show that the employer (1) "had actual knowledge" of the employee's tortious conduct towards the plaintiff; (2) that "the employer knew, or should have known, that such conduct constituted … a tort; and (3) that the employer failed to take adequate steps to remedy the situation." *Id.* (citing *Potts*, 604 So.2d at 400). Therefore, the Court will analyze Plaintiffs' tort claims against Swinney before discussing Ashley's potential liability.

### i. SWINNEY

#### 1. ASSAULT AND BATTERY

Acker and Bishop bring assault and battery claims against both Swinney and Ashely. To state a claim for assault and battery under Alabama law, a plaintiff must prove that "(1) the defendant touched the plaintiff; (2) the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner." *Harper v. Winston Ct*y, 892 So.2d 346, 353 (Ala. 2004) (quoting

*Ex parte Atmore Cmty. Hosp.*, 719 So.2d 1190, 1193 (Ala. 1998)) (internal quotation marks omitted).

Swinney argues that this Court should dismiss Acker and Bishop's claims because they have not provided substantial enough evidence to plead a claim of assault and battery. Neither Alabama law nor the motion to dismiss standard warrants the Court reach such a conclusion if Plaintiffs have met the Rule 8 standard. In arguing for dismissal, Swinney asks this Court to disregard many of Plaintiffs' factual allegations because they contain "pejorative" and "color" words. However, the Court is not entitled to disregard Plaintiffs' use of specific nouns to describe Swinney's conduct and alleged touching. Moreover, to the extent Swinney argues that this Court should ignore Plaintiffs' "summary allegations" as mere conclusions, the Court notes that it is only tasked with disregarding legal conclusions at the motion to dismiss stage.

Swinney himself admits that his behavior as alleged, if taken as true, is "consistent with behavior which *might* constitute assault." (Doc. 28 at 10.) (emphasis in the original). Based on the facts as alleged, the Court agrees. Swinney is alleged to have touched Acker's breasts twice and buttocks once. Further, Bishop alleges that Swinney leaned against her and touched her back with his genitals. These factual allegations in the amended complaint plausibly suggest

unwanted contact that was intentional rather than inadvertent and done in an offensive manner.

Swinney nevertheless argues that Plaintiffs' claim must fail because they do not present enough evidence to prove that this touching was intentional instead of inadvertent. (Doc. 28 at 10.) However, the plaintiff is not required to prove the intent of the defendant in her complaint to survive a motion to dismiss. *See Surrency v. Harbison*, 489 So. 2d 1097, 1104 (Ala. 1986) ("[j]ust as it is a jury question as to whether an assault and battery in fact occurred, it is a jury question as to what defendant['s] intent consisted of"). A reasonable jury may later find that the assault and battery allegations more consistent with incidental touching as Swinney suggests. However, the standard at the motion to dismiss stage is that a plaintiff states a plausible claim. Plaintiffs have done so. Thus, Swinney's motion to dismiss is due to be denied as to Bishop and Acker's assault and battery claims.

## 2. OUTRAGE

The Alabama Supreme Court describes the tort of outrage as follows:

The emotional distress caused by the defendant's conduct must be so severe that no reasonable person could be expected to endure it.... By extreme, we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

*Potts*, 771 So.2d at 465 (internal citations and quotations omitted). To succeed on their outrage claim, Plaintiffs must prove that (1) the defendant intended to inflict emotional distress, or knew or should have known that emotional distress would likely result from their conduct; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused her distress; and (4) the distress was severe. *Martin v. Hodges Chapel, LLC*, 89 So. 3d 756, 763 (Ala. Civ. App. 2011). "[T]he tort of outrage is an extremely limited cause of action." *Potts*, 771 So.2d at 465. "It is so limited that [the Alabama Supreme Court] has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment." *Id.* (internal citations omitted).

Plaintiffs allege sufficient facts to state a plausible claim of sexual harassment that created a hostile work environment, which included not only lurid comments and gestures by Swinney and a number of male employees at Ashley but also several incidences of unwanted physical contact by Swinney. At this stage, it is not necessary for the Court to determine whether or not Plaintiffs' allegations against Swinney constitute egregious sexual harassment or simple garden variety sexual harassment, when either way Plaintiffs have provided sufficient factual support to

plausibly state a claim for relief. Therefore, Swinney's motion to dismiss as to Plaintiffs' outrage claim is due to be denied.

### ii. ASHLEY

#### 1. ASSAULT, BATTERY, AND OUTRAGE

Ashley contends Plaintiffs' assault and battery, and outrage claims against it are due to be dismissed because "[t]here is no evidence that Swinney acted in the line and scope of his employment or in furtherance of [Ashley]'s business . . . [and there is] no evidence or allegation that [Ashley] knew of [his] conduct." (Doc. 30 at 40-41.) However, Plaintiffs have included sufficient factual allegations to plausibly suggest that Ashley knew of and ratified Swinney's conduct. Plaintiffs' factual allegations indicate that Plaintiffs lodged complaints, both formal and informal, about Swinney's actions, including his alleged physical contacts and sexually charged comments, to Ashley and the EEOC on a number of occasions before he was terminated. Acker's EEOC charge, which was one of the last EEOC charges filed concerning Swinney's behavior, predated Swinney's termination by almost two months. These facts plausibly suggest that Ashley had an awareness of Swinney's conduct for months before it took action to terminate him for his conduct. Therefore, Ashley's motion to dismiss is due to be denied as to Plaintiffs' claims for assault and battery, and outrage.

## 2. NEGLIGENT/ WANTON HIRING, TRAINING, AND SUPERVISION

Plaintiffs assert claims against Ashley based upon its alleged negligence or wantonness associated with its hiring, training, supervision, and retention of Swinney. To establish a claim for negligent or wanton supervision under Alabama law a plaintiff must show that "(1) the employee committed a tort recognized under Alabama law, (2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence, and (3) the employer failed to respond to this notice adequately." *Shuler v. Ingram & Assocs.*, 710 F.Supp.2d 1213, 1228 (N.D. Ala. 2010); *see also Voyager Ins. Cos. v. Whitson*, 867 So.2d 1065, 1071–73 (Ala. 2003).

As discussed above Plaintiffs' amended complaint states a plausible claim for relief on the torts of assault and battery, and outrage. Therefore, the first requirement is met. Further, Plaintiffs have alleged facts indicating that they reported Swinney's behavior several times, but that Ashley did not take action until Bishop played her recording of Swinney for Express. These facts suggest that Ashley had actual knowledge in regard to Swinney's tortious or that at the very least Swinney's behavior was of such frequency that it should have been discoverable by Ashley "in the exercise of due care." *Lane v. Cent. Bank of Ala., N.A.*, 425 So.2d 1098, 1100 (Ala. 1983) (quoting *Thompson v. Havard*, 235 So.2d

853, 858 (1970)). Although wantonness requires a higher degree of consciousness that injury is likely to result, the Court finds that the facts as alleged also state a plausible claim as Plaintiffs have alleged facts indicating that Ashely knew of Swinney's behavior, but did not take action. Therefore, Ashley's motion to dismiss is due to be denied as to Plaintiffs' claims' for wanton/ negligent training and supervision.

## IV.   CONCLUSION

For the reasons stated above, Hannan's Motion to Dismiss is due to be GRANTED (doc. 25), Seavers's Motion to Dismiss (doc. 26) is due to be DENIED, Swinney's Motion to Dismiss (doc. 28) is due to be DENIED,  and Ashley's Motion to Dismiss (doc. 29) is due to be GRANTED in part and DENIED in part. An Order consistent with this Opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on February 20, 2019.

L. Scott Coogler
United States District Judge

195126